DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

BARBARA J. VALLIERE (DCBN 439353)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7039
    FAX: (415) 436-7234
    barbara.valliere@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br>   v. <br> DANILLO BUSTILLO-SEVILLA, <br>     Defendant. | **CASE NO. CR-20-00021-VC** <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Date: March 23, 2020 <br> Time: 2:30 p.m. |

## I.    INTRODUCTION

On December 12, 2019, the defendant, Danillo Bustillo-Sevilla, distributed a mixture and substance containing cocaine base to an undercover police officer in the vicinity of Ninth and Mission Streets, just south of the Tenderloin neighborhood in San Francisco, California. On January 16, 2020, a federal grand jury indicted defendant on one count of distribution of cocaine base. On March 10, 2020, the defendant pleaded guilty to that count without the benefit of a plea agreement.

For the reasons set forth below, the United States respectfully requests that the Court sentence the defendant to a term of three months of imprisonment, to be followed by three years of supervised release which shall include three months of community confinement, the standard conditions requested

US SENTENCING MEMO
20-CR-00021 VC

by Probation, and a stay-away condition from the Tenderloin neighborhood of San Francisco. Given the need for deterrence, and the need to protect the public, the government submits that this would be a reasonable sentence based on consideration of the United States Sentencing Guidelines and the factors outlined in 18 U.S.C. § 3553(a).

## II. BACKGROUND

### A. Offense Conduct

On December 12, 2019, members of the San Francisco Police Department (SFPD) Narcotics Division and Tenderloin Station were conducting a "buy/bust" operation in and around the Tenderloin neighborhood in San Francisco. As part of the operation, the SFPD officers photocopied and timestamped marked city funds (MCF) to be used in the operation. *See* Declaration of Barbara J. Valliere (hereinafter "Declaration"), ¶ 2 & Ex. A (SFPD Incident Report – Narrative). The MFC included one ten-dollar bill (MF 595338158) and two five-dollar bills (ME 45765777 B and ML 6680351 H). *Id*.

At about 9:00 a.m., the undercover "buy" officer saw a Hispanic male, later identified as Danillo Bustillo-Sevilla, standing near Ninth Street in the apparent act of counting money. Ex. A (SFPD Incident Report – Narrative). The undercover officer approached the defendant and said "Let me get two dimes." *Id*. When the defendant responded "I only have nickels," the undercover officer handed him a ten dollar bill and two five dollar bills and said "Let me get a five." *Id*. The defendant spit some objects which turned out to be five rocks of cocaine base, into his hand and gave them to the undercover officer. *Id*. The officer then gave an arrest signal to SFPD officers who were observing, and he left the area. *Id*.

Two SFPD officers found Bustillo-Sevilla at 130 Ninth Street and placed him under arrest. *Id*. While defendant was detained at the arrest scene, the "buy" officer was driven past and identified him as the man who had just sold him crack cocaine. *Id*. During a search incident to arrest, the officers recovered two individually wrapped rocks of suspected cocaine from his hooded sweatshirt. The officers also recovered the ten-dollar bill (MG 24474453C) and two five-dollar bills (MC 65119757 B and ML 83054117 C) from Bustillo-Sevilla's right front pocket. *Id*. A test of the drugs sold to the "buy" officer revealed a positive result for cocaine base. *Id*.

On January 16, 2020, a federal grand jury returned an indictment charging defendant with one count of distribution of cocaine base under 21 U.S.C. § 841(a)(1) and (b)(1)(C). Dkt. 1. On March 10, 2020, the defendant pleaded guilty to the charge in the indictment without the benefit of a plea agreement. Dkt. 7. At the March 10 hearing, defendant's counsel requested an expedited sentencing, and the Court agreed to forgo a presentence investigation and presentence report. Dkt. 7.

Upon his arrest, defendant did not provide a home address, a telephone number, or a place of employment. Ex. A (SFPD Incident Report – page 1).

### B. The Defendant's Sentencing Guidelines Calculation

The United States has calculated the United States Sentencing Guidelines as follows:

1. Base Offense Level, U.S.S.G. § 2D1.1(c)(14):   12
2. Acceptance of Responsibility, U.S.S.G. § 3E1.1:   -2
3. Adjusted Offense Level:   10

The government understands, but has not confirmed, that defendant's criminal history category is I. If defendant's criminal history category is I, then the defendant's advisory Guidelines range is 6 to 12 months' imprisonment, which falls within Zone B of the Guidelines Sentencing Table. *See* U.S.S.G. Ch. 5, Pt. A. Under U.S.S.G. § 5C1.1(c)(2), the minimum term of a Zone B sentence may be satisfied by a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one month is satisfied by imprisonment.

## III. DISCUSSION

### A. Legal Standard

The Court should impose a sentence sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also* 18 U.S.C. § 3553(a). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the advisory Guidelines. *Id*.

20-CR-00021 VC

After determining the appropriate advisory Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Under Section 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) The need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) The need for the sentence imposed to protect the public from further crimes of the defendant; and

(5) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B.    Sentencing Recommendation**

The government recommends that the Court sentence the defendant Danillo Bustillo-Sevilla be sentenced to three months of imprisonment, followed by three years of supervised release that should include three months of community confinement, the standard conditions requested by Probation and a stay-away condition from the Tenderloin neighborhood of San Francisco. This recommended sentence would be sufficient but not greater than necessary to reflect the purposes of sentencing, based on a consideration of the advisory Guidelines and the Section 3553(a) factors.

*First*, the government's recommended sentence reflects the need for adequate deterrence that would promote respect for the law. Although defendant has no prior criminal convictions, defendant committed the instant offense and his other drug trafficking activity in the Tenderloin while in the United States illegally. The government's recommended sentence is thus the minimum sentence required to ensure adequate deterrence that would promote respect for the law.

*Second*, the defendant's offense is serious. The amount of narcotics at issue in this case may not be high compared to other cases that come before this Court. Nonetheless, drug dealing in the Tenderloin cases harm and danger to some of the most vulnerable persons in the community. The growing number of drug overdose deaths in the city have been concentrated in the Tenderloin neighborhood and immediately surrounding area. *See* Declaration, ¶ 3, Ex. B (Phillip O. Coffin, M.D.,

US SENTENCING MEMO
20-CR-00021 VC

Substance Use Trends in San Francisco Through 2018, Center on Substance Use and Health, Department of Public Health, City and County of San Francisco (Dec. 2019), at 7.[1] More than half of all the drug sales incidents booked or cited by the San Francisco Police Department took place in the Tenderloin district – specifically, "56 percent . . . by far the highest of any police district in the City" in fiscal year 2017-2018. *See* Declaration, ¶ 4, Ex. C (Budget and Legislative Analyst, City and County of San Francisco Board of Supervisors, Policing and Criminal Justice Costs Related to Open Air Drug Dealing in the Tenderloin, South of Market, and Mid-Market Neighborhoods (Apr. 1, 2019), at 1.[2]

*Third*, the government's recommended sentence, where defendant serves three months of imprisonment and then three months of community confinement while on supervised release, is specifically designed to protect the public from further crimes by the defendant. Community confinement for the initial portion of defendant's supervised release provides some assurance that defendant will be precluded from committing additional crimes. Moreover, while defendant will likely be deported after serving his term of imprisonment thereby suspending any term of supervised release, imposing a condition of additional community confinement attendant to defendant's supervised release term provides a strong disincentive for defendant to illegally return to the country to sell drugs.

*Fourth*, while it is true that defendant will likely be deported when he is released from custody, to ensure that, should he return to the United States defendant is forever dissuaded from selling drugs in the Tenderloin, the government is requesting that the Court impose a special condition that requires the defendant to stay out of that area. In short, to ensure the protection of that specific community, the government believes that the following condition is appropriate in light of defendant's history of drug trafficking in the Tenderloin:

> <u>Special Condition (Tenderloin Stay Away)</u>
> The defendant shall not be present in the area in San Francisco bordered on the west by Polk Street and South Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Mission Street, with the following exceptions: 1) he may enter the area to attend any court proceedings at 450 Golden Gate Avenue, or after requesting and receiving approval from his assigned U.S. Probation Officer; and 2) he may travel on BART, MUNI, or other public transportation through the area, but may not then alight from said transportation and enter the area on foot.

---

[1] Available at https://ndews.und.edu/sites/ndews.und.edu/files/San-Francisco-Substance-Use-2019-Annual-Report-Trends-Through-2018.pdf.

[2] Available at https://sfbos.org/sites/default/failes/BLA_042519_Open_Drug_Dealing_Sup_Haney.pdf.

US SENTENCING MEMO
20-CR-00021 VC

### III. CONCLUSION

For the reasons stated above, the United States recommends that the Court sentence the defendant to three months of imprisonment, to be followed by three years of supervised release to include three months of community confinement, the standard conditions requested by Probation, and a stay-away condition from the Tenderloin neighborhood of San Francisco.

DATED: March 16, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

 /s/ *Barbara J. Valliere*
BARBARA J. VALLIERE
Assistant United States Attorney

US SENTENCING MEMO
20-CR-00021 VC